**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **SAMANTHA TRIMBLE,** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:14-CV-868-O** |
| | § | |
| **MILLWOOD HOSPITAL,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

## ORDER

Before the Court are Defendant's Motion to Dismiss for Failure to State a Claim (ECF No. 35), filed November 9, 2015; Plaintiff's Response to Defendant's Motion to Dismiss for Failure to State a Claim (ECF No. 57), filed December 28, 2015; and Defendant's Reply (ECF No. 65), filed December 31, 2015. Also before the Court are Defendant's Motion to Dismiss for Failure to Comply with Texas Civil Practice & Remedies Code § 74.351 (ECF No. 36), filed November 9, 2015; Plaintiff's Response (ECF No. 58), filed December 28, 2015; and Defendant's Reply (ECF No. 64), filed December 30, 2015. Finally, Defendant's Motion for Summary Judgment (ECF No. 37), filed November 9, 2015; Plaintiff's Response (ECF No. 63), filed December 29, 2015; Defendant's Reply (ECF No. 68), filed January 5, 2016; and Plaintiff's Sur-Reply (ECF No. 79), filed February 26, 2016 are before the Court.

Having considered the motions, the briefing, the appendices, and the applicable law, the Court finds that Defendant's Motion to Dismiss for Failure to Comply with Texas Civil Practice & Remedies Code § 74.351 (ECF No. 36) should be and is hereby **GRANTED** as to Trimble's state law claims; Defendant's Motion for Summary Judgment (ECF No. 37) should be and is

hereby **GRANTED**; and Defendant's Motion to Dismiss for Failure to State a Claim (ECF No. 35) is **DENIED** as moot.

## I.     BACKGROUND

The facts of this case are contested.  The following factual recitation is taken largely from Plaintiff's Amended Complaint.  Am. Compl., ECF No. 21.  On Friday, October 26, 2012, Samantha Trimble ("Trimble"), a teacher, was placed on administrative leave after one of Trimble's students allegedly fabricated a story that Trimble had played a humiliating joke on that student.  Am. Compl. ¶ 20, ECF No. 21.  Terrified of the consequences that could follow, Trimble became very upset and called her pastor for emotional support.  *Id.* ¶ 21.  Sometime later, Trimble decided to see a physician.  *Id.*  ¶ 22.  Trimble went to her doctor's office and answered the physician assistant's questions honestly regarding feelings of panic, feelings of anxiety, sleep issues, and eating problems.  *Id.* ¶ 23.  Trimble expressed her desire for a free consultation for psychological help that same evening and her primary care physician referred her to Millwood Hospital ("Millwood").  *Id.*; Sur-Reply ¶ 22, ECF No. 79.

Trimble went to Millwood and spoke with a Licensed Professional Counselor.  *Id.* ¶ 24. She signed a consent to have an intake completed, but never spoke about admission to the facility. *Id.* ¶ 25.  Trimble was then taken down a long hallway and brought into a locked facility.  *Id.* ¶ 26. She asked when she would see the psychiatrist but her request was ignored.  *Id.* ¶ 26.  Trimble received medications for anxiety and within minutes she was extremely drowsy.  *Id.* ¶ 29.  After she woke up, Trimble expressed that it was a mistake to have come to Millwood and that she wanted to leave the facility.  *Id.* ¶ 30.  After a nurse provided Trimble an "Against Medical Advice" form, Trimble filled out the form and asked to call her mother.  *Id.* ¶ 32.  Her request was denied. *Id.* Trimble alleges Millwood created fraudulent medical records in her file.  *Id.* ¶ 33.  She alleges

that Millwood refused to accommodate her religious beliefs, threatened her, repeatedly ignored her, and held her at the facility against her will. *Id.* ¶¶ 34–42. While in the adult wing, Trimble encountered severely disturbed and violent individuals that put her in fear of her life. *Id.* ¶ 81. Trimble contacted the Arlington Police Department and asked them to intervene. *Id.* ¶ 65. The Police Department was not able to intervene, but after two additional days she was discharged. *Id.* ¶¶ 66–73.

Based on these facts, Trimble's Amended Complaint alleges claims pursuant to the Rehabilitation Act of 1973 ("the Rehabilitation Act"); the Americans with Disabilities Act ("ADA"); 42 U.S.C. § 1983 ("§ 1983"); the Texas Mental Health Code; and for false imprisonment; "medical negligence;" common law negligence; and gross negligence. Am. Compl. 13–18, ECF No. 21. Trimble has since abandoned her claims under the ADA and § 1983. Sur-Reply n.1, ECF No. 78. Millwood argues in its motion to dismiss that Trimble was obligated to comply with Texas's health care liability expert report requirement, found in Texas Civil Practice & Remedies Code § 74.351, but failed to do so, which requires the Court to dismiss those claims.

In its motion for summary judgment, Millwood argues that Trimble does not have evidence of disability and intentional discrimination to support her claims the Rehabilitation Act. The applicable legal standards are described below.

## II. LEGAL STANDARD

### A. Erie Doctrine

Under the *Erie* Doctrine, "a federal court adjudicating a claim arising out of state law applies state substantive law and federal procedural law so as to discourage forum shopping and avoid inequitable administration of laws." *Rahimi v. United States*, 474 F. Supp. 2d 825, 827 (N.D. Tex. 2006) (Fitzwater, J.). "The Fifth Circuit Court of Appeals has characterized the Federal

Rules of Evidence as 'procedural' rules." *Id.* (citing *Washington v. Dep't of Transp.*, 8 F.3d 296, 300 (5th Cir. 1993). Where a state rule reflects a "substantive state policy not in conflict with the plain meaning of the federal rule, then the state rule is the rule of decision and should be applied under the terms of the *Erie* doctrine." *Exxon Corp. v. Burglin*, 42 F.3d 948, 950 (5th Cir. 1995). In a two-step analysis, the Court must determine if the state rule is in direct conflict with a constitutional federal rule and then determine if the state rule reflects a substantive state policy. *Id.*; *see also Poindexter v. Bonsukan*, 145 F. Supp. 2d 800, 803 (E.D. Tex. 2001).

### B.    Summary Judgment

Summary judgment is appropriate if no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "[T]he substantive law will identify which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When a motion for summary judgment is made, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Id.* at 250. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *Id.*

Procedurally, the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to establish the existence of a genuine dispute for trial. *Wise v. E.I. DuPont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). The Court must accept the evidence of the nonmoving party and draw all justifiable inferences in favor of the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

However, the Court is "not like a pig, hunting for truffles buried in briefs, or, in this case an appendix." *See Arlington Apartment Inv'rs, LLC v. Allied World Assur. Co., Inc.*, 612 F. App'x 237, 238 (5th Cir. 2015).  Thus, evidence in the form of a sweeping general denial is insufficient to raise a genuine dispute of material fact on summary judgment.  *Reese v. Anderson*, 926 F.2d 494, 499 n.4 (5th Cir. 1991).  The non-movant must come forward with specific facts showing that there is a genuine dispute for trial.  *See* Fed. R. Civ. P. 56(e).  In the same vein, Local Rule 56.3(a)(2) and 56.5(c) require that each assertion about the absence or presence of a genuine dispute of fact be supported by a citation to each relevant page of a party's own or the opposing party's appendix.

## III.   ANALYSIS

### A.   Health Care Liability Claims

Trimble raises three arguments to defeat Millwood's § 74.351 challenge.  She argues that § 74.351 does not apply in federal court, that a majority of her claims are not health care liability claims, and that Millwood waived its right to a report.  First, the Court will determine if, under *Erie*, § 74.351 applies in federal court.  Next, the Court will determine which, if any, of Trimble's claims are health care liability claims as defined by the statute.  Finally, the Court will assess whether Millwood waived or is judicially estopped from asserting its right to a report.

### 1.   Section 74.351 Applies in Federal Court.

Whether § 74.351 applies in federal court is an open question in the Fifth Circuit.[1]  *See Prentice v. United States*, 980 F. Supp. 2d 748, 752 (N.D. Tex. 2013) (Cummings, J.); *see also*

---

[1] Millwood cites the unpublished Fifth Circuit opinion in *Chapman v. United States* to support its argument that § 74.351 applies in federal court.  353 F. App'x 911, 913 (5th Cir. 2009).  In *Chapman*, although the Fifth Circuit did not analyze § 74.351 in the *Erie* framework, the Fifth Circuit affirmed summary judgment against a federal prisoner because the prisoner could not establish proximate cause for his claims and he failed to file a § 74.351 report.  *Id.* at 912–14.  The court stated in dicta that "[b]ecause Chapman failed to

*Passmore v. Baylor Healthcare Sys.*, No. 3:13-cv-5016 (N.D. Tex. Mar. 23, 2015) (Solis, J.); *but see Bunch v. Mollabashy*, No. 3:13-cv-1075, 2015 WL 1378698, at *9 (N.D. Tex. Mar. 26, 2015) (Fish, J.); *Mason*, 486 F. Supp. 2d 621;  *Garza*, 234 F.R.D. 617.   Millwood argues that it does. Trimble responds that § 74.351 does not apply in federal court because § 74.351 is in direct conflict with Federal Rule of Civil Procedure 26 ("Rule 26") and is a procedural, not substantive, rule of Texas law.   The Court applies the legal standard articulated in Part II to determine if § 74.351 applies.   If the Court concludes that § 74.351 is not in direct conflict with Rule 26, the Court will proceed to determine whether § 74.351 is a procedural or substantive rule in Texas law.

> a.   Section 74.351 does not conflict with Federal Rule of Civil Procedure 26.

The first step of the Erie analysis is "to determine whether, when fairly construed, the scope of [Rule 26] is 'sufficiently broad' to cause a 'direct collision' with [§ 74.351] or, implicitly, to 'control the issue' before the court, thereby leaving no room for the operation of [§ 74.351]."  *All Plaintiffs v. All Defendants*, 645 F.3d 329, 333 (5th Cir. 2011) (citing *Burlington N. R.R. Co. v. Woods*, 480 U.S. 1, 4–5 (1987)).   The Court "similarly may not accord a rule an unduly broad interpretation to force a conflict between a state law and federal rule."  *Cruz v. Chang*, 400 F. Supp. 2d 906, 913 (W.D. Tex. 2005).   To determine whether the Rule covers a particular issue, the Court looks to the plain meaning of the federal rule's language.  *Id.*   If the Court determines that a "direct collision" does occur, the Court applies the federal rule.  *Id.*

---

meet [§ 74.351's] threshold requirement for his lawsuit, the district court properly dismissed his case." *Id.* at 914.  Because *Chapman* only addressed § 74.351 in dicta, Trimble asks the Court to adopt the position of courts finding that § 74.351 conflicts with Rule 26.  *See Mason v. United States*, 486 F. Supp. 2d 621 (W.D. Tex. 2007); *Garza v. Scott and White Mem. Hosp.*, 234 F.R.D. 617 (W.D. Tex. 2005); *Poindexter v. Bonsukan*, 145 F. Supp. 2d 800.  The Court notes *Chapman*'s basic support for applying § 74.351 but does not rely on *Chapman* as binding precedent in reaching the Court's conclusion.

6

Rule 26 governs the disclosure of expert testimony. *See* Fed. R. Civ. P. 26(a)(2). The plain language of Rule 26 provides that retained experts must provide expert reports, details the requirements for the report's contents, and sets out a default timeline for disclosure. *Id.* Rule 26 expert reports must be "detailed and complete," and include all of the opinions the witness will express and the reasons for them; the facts or data considered by the witness in forming them; and any exhibits that will be used to summarize or support them, including other requirements. *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 571 (5th Cir. 1996); Fed. R. Civ. P. 26(a)(2)(B)(i–vi). If a party fails to properly disclose an expert under Rule 26, the court is within its discretion to impose a sanction and may exclude the expert. *Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 883 (5th Cir. 2004).

While Rule 26 defines discovery and disclosure requirements, § 74.351 has "a unique purpose separate and apart from the procedural rules relating to discovery and typical expert reports." *Spectrum Healthcare Resources, Inc. v. McDaniel*, 306 S.W.3d 249, 253 (Tex. 2010). Section 74.351 functions as a preliminary merits review of claims and prohibits the use of expert reports as discovery. *Cruz*, 400 F. Supp. 2d at 913–14 (finding that § 74.351 and Rule 26 "cannot overlap as the former is by definition a non-discovery procedure and the latter is a discovery procedure."). While Rule 26 requires an expert to disclose a complete statement of all the opinions the expert will express, § 74.351 only requires a "fair summary" of the expert's opinions regarding standards of care, the health care provider's failure to meet the standards, and the causation between that failure and the damages sought. *Compare* Fed. R. Civ. P. 26 *with* Tex. Civ. Prac. & Rem. Code § 74.351. With limited exception, discovery is stayed until a sufficient § 74.351 has been filed, and the report cannot be used in evidence and shall not be referred to by any party for any purposes. Tex. Civ. Prac. & Rem. Code § 74.351(k).

7

The distinctly different timing of the reports signals that they do not conflict.  Section 74.351 operates at the outset of litigation to prevent the costly progression of frivolous health care liability claims.  By contrast, Rule 26 expert report deadlines are generally calculated relative to the end of litigation.  Rule 26, combined with the liberal federal pleading requirements, is not broad enough to provide for dismissal of frivolous claims at an early stage in litigation, and "as such [frivolous] malpractice claims would survive until the factual basis could be tested through a motion for summary judgment."  *See Cruz*, 400 F. Supp. 2d at 915.

The § 74.351 expert report requirement essentially functions as a certificate of merit for medical malpractice claims.  In other states, similar statutes have been held to apply without directly conflicting with the Federal Rules of Civil Procedure.  For example, in *Amor v. Arizona*, the district court found that Arizona's preliminary expert affidavit requirement applied in federal court and did not conflict with Federal Rules 11 or 26.  No. cv-06-449-TUC-CKJ, 2010 WL 960379, at *7–9 (D.A.Z. Mar. 15, 2010).  Similarly, in *Chamberlain v. Giampapa*, the Third Circuit found no direct conflict between the New Jersey affidavit of merit statute and Federal Rules 8 and 9.  210 F.3d 154, 160 (3rd Cir. 2000); *see also Lee v. Putz*, No. 1:03-cv-267, 2006 WL 1791304 (W.D. Mich. Jun. 27, 2006) (concluding that Michigan's affidavit of merit requirement applies in federal court) (collecting cases); *but see Baird v. Celis*, 41 F. Supp. 2d 1358, 1360–61 (N.D. Ga. 1999) (finding that affidavit of merit requirement directly conflicts with Rule 8).  "The great weight of authority favors application in federal court of state laws requiring screening of malpractice claims before they may be tried."  *Connolly v. Foudree*, 141 F.R.D. 124, 127–28 (S.D. Iowa 1992) (finding Iowa's expert disclosure mandate did not conflict with Rule 26) (collecting cases).  The Court agrees with these courts' analyses.  Accordingly, the Court concludes that § 74.351 does not conflict with the Federal Rules.

> *b.*      *Section 74.351 is a substantive rule in Texas law.*

Federal courts sitting in diversity apply state substantive law and federal procedural law. *Bartley v. Euclid, Inc.*, 158 F.3d 261, 280 (5th Cir. 1998). "Classification of a law as 'substantive' or 'procedural' for *Erie* purposes is sometimes a challenging endeavor." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996). The Court applies an "outcome-determination" test, asking: "Does it significantly affect the result of a litigation for a federal court to disregard a law of a State that would be controlling in an action upon the same claim by the same parties in a State court?" *Id.* In its analysis, the Court does not apply the "outcome-determination" test mechanically; "instead, its application must be guided by the twin aims of the *Erie* rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws." *Id.* at 428 (citing *Hanna v. Plumer*, 380 U.S. 460, 468 (1965)).

While the primary purpose of Rule 26 is to "provide notice to opposing counsel" and "eliminate unfair surprise," the Texas Supreme Court characterizes the expert report requirement as having "a unique purpose separate and apart from the procedural rules relating to discovery and typical expert reports." *Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 642 (7th Cir. 2008); *Muldrow el rel. Estate of Muldrow v. Re-Direct, Inc.*, 493 F.3d 160, 167 (D.C. Cir. 2007); *Spectrum Healthcare Resources, Inc. v. McDaniel*, 306 S.W.3d 249, 253 (Tex. 2010). Subject to waiver by the claimant, the § 74.351 report is not admissible in evidence by any party, and shall not be used or referred to in a deposition, trial, or during the course of the action for any purpose. Tex. Civ. Prac. & Rem. Code §§ 74.351(k), (t). The Texas Legislature "created the threshold report requirement as a substantive hurdle for frivolous medical liability suits before litigation gets underway." *Id.* (citing Tex. Civ. Prac. & Rem. Code § 74.351) ("staying all discovery, with few exceptions, until service of the threshold expert report").

To this end, if an expert report is not filed within 120 days after the defendant's original answer, the rule requires that a Court shall enter an order dismissing the claims against the health care provider with prejudice and award reasonable costs and attorney's fees to the provider. Tex. Civ. Prac. & Rem. Code § 74.351.   As the Texas Supreme Court has recognized, the Texas Legislature imposed this "seemingly harsh" report requirement deadline as part of its effort to "reduce excessive frequency . . . of health care liability claims."   *Ogletree v. Matthews*, 262 S.W.3d 316, 320 (Tex. 2007).   Because § 74.351 expresses Texas's preferred policy of quickly disposing of frivolous health care liability claims separate from any applicable discovery parameters, the Court concludes the § 74.351 expert report requirement is a substantive rule, not a procedural rule.

In this case, declining § 74.351's application in federal court "would promote the choice of the United States rather than of state courts in order to gain the advantage of different laws," and thus would encourage forum shopping. *Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99, 110 (1945); *see also Hanna*, 380 U.S. at 468.   Again, certificates of merit provide a meaningful comparison.   In *Garland Dollar General v. Reeves Development*, the court considered whether Texas's certificate of merit requirement under Texas Civil Practice & Remedies Code § 150.002 applied in federal court.   *Garland Dollar Gen. LLC v. Reeves Dev., LLC*, No. 3:09-cv-0707, 2010 WL 4259818 (N.D. Tex. Oct. 21, 2010) (Fitzwater, J.).   The court cited the Third Circuit's reasoning in *Chamberlain* and held that because the state law affects the outcome of the case, it applies in a diversity case in federal court.   *Id.* at *7.   District courts in other states have reached the same conclusion with regard to preliminary affidavit requirements.   *See, e.g., Amor*, 2010 WL 960379, at *8 (finding that the preliminary expert affidavit requirement applied in federal court and noting that "[t]he Arizona state legislature has evinced a clear policy to curtail frivolous

medical malpractice lawsuits"); *Hopkins v. Frontino*, No. 11-900, 2012 WL 32400, at \*1 (D. Del. 2012) (concluding that Delaware's affidavit of merit applied in federal court and required dismissal of the plaintiff's state law medical negligence suit) ("State statutes requiring affidavits of merit constitute substantive law that federal courts must apply in diversity professional negligence suits."). The same reasoning applies to § 74.351.

Based on the foregoing analysis, the Court determines that § 74.351 is not in direct conflict with any federal rule and is a substantive requirement governing Texas state law health care liability claims. *Prentice*, 980 F. Supp. 2d at 752; *Passmore*, 3:13-cv-5016. Accordingly, § 74.351 applies in federal court. The Court will now determine if Trimble brings health care liability claims as controlled by the statute.

2.    Trimble's Claims Are Health Care Liability Claims.

Because the Court has determined that § 74.351 applies in federal court, the Court must determine if Trimble's claims are health care liability claims as contemplated by the statute. A "health care liability claim" is a "cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury or death of a claimant." Tex. Civ. Prac. & Rem. Code § 74.001(13). To determine if a cause of action is a "health care liability claim," the Court examines the underlying nature of the claim, not simply the plaintiff's pleadings. *Yamada v. Friend*, 335 S.W.3d 192, 196 (Tex. 2010) (citing *Garland Cmty. Hosp. v. Rose*, 156 S.W.3d 541, 543 (Tex. 2004) (addressing former Tex. Rev. Civ. Stat. art. 4590i, repealed by Act of June 2, 2003, 78th Leg., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884)). The Court considers factors such as whether "the acts or omissions alleged in the complaint are an inseparable part of the

rendition of health care services." *Garland*, 156 S.W.3d at 544. The Court also considers whether medical expert testimony will be required to prove the claim. *Tex. West Oaks Hosp., L.P. v. Williams*, 371 S.W.3d 171, 182 (Tex. 2012).

If Trimble's complaint raises health care liability claims, § 74.351 establishes a 120-day deadline for serving an expert report under the section:

> In a health care liability claim, a claimant shall, not later than the 120th day after the date the claim was filed, serve on each party or the party's attorney one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted.... Each defendant physician or health care provider whose conduct is implicated in a report must file and serve any objection to the sufficiency of the report not later than the 21st day after the date it was served, failing which all objections are waived.

"Absent an agreement among the parties for an extension of time to serve the reports, the trial court has no discretion but to dismiss the case with prejudice and to award reasonable attorney's fees and costs of court if the claimant fails to meet this deadline." *Thoyakulathu v. Brennan*, 192 S.W.3d 849, 852 (Tex. App.—Texarkana 2006, no pet.).

In *Groomes v. USH of Timberlawn*, Groomes brought suit against Timberlawn Mental Health System for false imprisonment, intentional infliction of emotional distress, and abuse of process after Timberlawn did not discharge her son from its facility upon request. 170 S.W.3d 802, 803 (Tex. App.—Dallas 2005, pet. denied). Groomes's son was admitted to Timberlawn as a voluntary patient. *Id.* While at the hospital,

> Groomes instructed Timberlawn not to give [her son] any medications without her consent. When she learned later that day that a doctor had administered medications without asking her, she signed a letter of release asking Timberlawn to discharge [her son]. A third doctor advised Groomes that [her son] should remain at Timberlawn . . . for observation and to prevent another suicide attempt, but Groomes insisted on [her son's] discharge. That doctor signed an order of discharge against medical advice on August 11, but after consulting with another psychiatrist and reviewing [Groomes's son's] file, decided to discontinue the discharge order and to apply for an order of protective custody. [Groomes's son] ultimately was discharged [two days later].

*Id.* at 803–04.

The court noted that for Groomes to "prevail on her claim for false imprisonment, Groomes must prove that Timberlawn acted without authority." *Id.* at 806 (citing *Randall's Food Mkt., Inc. v. Johnson*, 891 S.W.2d 640 (Tex. 1995) (discussing elements of false imprisonment cause of action)). "Texas law authorizes physicians who have reasonable cause to believe a patient meets the criteria for court-ordered mental health services to seek court intervention for that patient's safety." *Id.* (citing Tex. Health & Safety Code § 572.004). "The doctor's decision to discontinue [Groomes's son's] discharge . . . implicates [his] diagnosis, care, and treatment at Timberlawn." *Id.* The court found that Groomes's false imprisonment claim implicated the standard of care because Groomes would necessarily have to offer evidence that the doctor departed from the standard of care by not authorizing her son's discharge. *Id.* "The underlying nature of all of Groomes'[s] claims against Timberlawn derive from the doctors' decisions to administer medication and to discontinue [her son's] discharge." *Id.* Because Groomes failed to comply with the expert report requirement, the court of appeals upheld the district court's decision to dismiss the claims with prejudice. *Id.* at 806–07.

Trimble's situation is analogous. Dr. Mehta "made a medical judgment to refrain from discharging Plaintiff until Plaintiff . . . could be fully evaluated and a determination could be made as to whether it would be safe and appropriate to allow for discharge." Mot. Dismiss 2, ECF No. 36. Her false imprisonment, negligence, and gross negligence claims implicate the standard of care, her diagnosis, and treatment at Millwood. Expert testimony will be required to establish each of these claims. The underlying nature of Trimble's Texas claims against Millwood derive from the doctors' decisions to administer medication and discontinue her discharge. Accordingly, the

Court concludes that Trimble's negligence, gross negligence, and false imprisonment claims are health care liabilities governed by § 74.351.

Trimble cannot recast her health care liability claims to avoid § 74.351's expert report requirement. Trimble cites *Sorokolit v. Rhodes* to argue that "[i]t is well-settled that acts of a healthcare provider that are 'false, misleading and deceptive' are not considered health care liability claims." Resp. Summ. J. ¶ 42, ECF No. 58. Contrary to Trimble's broad interpretation, *Sorokolit* explained that "claims that a physician or health care provider was negligent may not be recast as [Deceptive Trade Practices Act] actions to avoid" the expert report requirement. 889 S.W.2d 239, 242 (Tex. 1994). The court held that DTPA liability can lie outside of the medical report requirement when liability is not based on a failure to follow the standard of care but is rather based on the DTPA definition of deceptive. *Id.* Trimble, however, does not assert a claim under the DTPA or for intentional breach of express guarantees; none of her claims implicate independent fraud. Thus, *Sorokolit* is inapplicable to the instant case.

Finally, Trimble attempts to distinguish between claims arising from Millwood's acts and omissions "occurring '*during* the patient's medical care, treatment or confinement,'" as opposed to act or omissions occurring before treatment began. Resp. Summ. J. 7, ECF No. 58. Because many of her allegations relate to acts and omission made before any medical care or treatment, and not during such medical care or treatment, Trimble argues that they are neither medical malpractice claims nor an impermissible recasting of her civil rights claims. *Id.* The Court is not persuaded by Trimble's characterization of her claims. Regardless, Texas law does not interpret the expert report requirement so narrowly. *See Garland*, 156 S.W.3d 541 (interpreting the predecessor to Chapter 74 and concluding that the "before" versus "during" argument was not consistent with the statute, and that a claim for negligent credentialing was a healthcare liability claim).

14

The Court finds that Trimble's claims brought pursuant to the Texas Mental Health Code; false imprisonment; "medical negligence;" common law negligence; and gross negligence are subject to the § 74.351 expert report deadline.[2]  *See* Am. Compl. 13–18, ECF No. 21.

3.     Millwood Hospital Did Not Waive Its Right to an Expert Report.

Finally, Trimble argues that even if she did not file the required expert report, Millwood waived its right to contest her failure to provide a report under § 74.351.  Resp. Summ. J. 5, ECF No. 58.  Waiver is the "intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right."  *Sun Expl. & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987).  "Waiver is largely a matter of intent, and for implied waiver to be found through a party's actions, intent must be clearly demonstrated by the surrounding facts and circumstances."  *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003) (citing *Motor Vehicle Bd. v. El Paso Indep. Auto. Dealers Ass'n, Inc.*, 1 S.W.3d 108, 111 (Tex. 1999)).  Trimble specifically highlights that Millwood participated in the scheduling conference and "failed to request that the Court modify [the scheduling order]."  Resp. Summ. J. 5, ECF No. 58.  The Court finds that Millwood did not intentionally relinquish its known right.  To the contrary, Trimble concedes that Millwood raised concerns over whether Chapter 74 of the Texas Civil Practice & Remedies Code applies in federal court.  *Id.*

In *Jernigan*, the Texas Supreme Court, applying waiver principles to Chapter 74's predecessor statute, found that a doctor who waited more than 600 days after receiving a report purporting to satisfy the statutory requirements to move for dismissal did not waive his right to dismissal under the statute.  *Jernigan*, 111 S.W.3d at 157.  The Court reasoned that "[t]he mere fact that a defendant waits to file a motion for dismissal [based on an insufficient report] is

---

[2] In any event, Trimble has not designated experts to testify to the applicable standard of care.  *See* ECF Nos. 1–26; Sched. Order, ECF No. 16 (deadline to designate experts July 10, 2015).

insufficient to establish waiver unless the defendant's silence or inaction shows an intent to yield the right to dismissal based on the report's insufficiency." *Id.*

> Rather, to establish an intent to waive the right to dismissal under [the statute], the defendant's silence or inaction must be inconsistent with the intent to rely upon the right to dismissal. For example, if the defendant fails to object to the report's inadequacy until after the case is disposed of on other grounds, waiver may be implied.

*Id.* The fact that the doctor filed a motion for summary judgment on other grounds was not found to be inconsistent with an intent to assert the doctor's right to dismissal. *Id.* The doctor's participation in discovery was likewise insufficient to establish waiver. *Id.*

Because Trimble fails to show circumstances indicating Millwood's intentional relinquishment of its right to dismissal, *Jernigan* supports a finding of no waiver. Trimble cites no caselaw to persuade the Court otherwise. *See* Resp. Summ. J. 5–6, ECF No. 58. Similarly, Trimble has not established that Millwood should be judicially estopped from asserting its right to dismissal. "In determining whether to apply judicial estoppel, we primarily look for the presence of the following criteria: '(1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently.'" Participating in a scheduling conference, in these circumstances, is not inconsistent with asserting a right to dismissal. Millwood did not assert other legal positions inconsistent with asserting its right to an expert report under § 74.351.

Based on the foregoing analysis, the Court concludes that Trimble's negligence, gross negligence, "medical negligence," false imprisonment claims, and claims under the Texas Mental Health Code should be and are hereby **DISMISSED with prejudice**.

### B.     Summary Judgment – Remaining Claims

Because § 74.351 does not apply to independent federal causes of action, the Court analyzes Trimble's remaining claims under the summary judgment standard.  *See Velasquez v. Hayman*, 546 F. App'x 94, 97–98 (3d Cir. 2013) (finding that New Jersey's affidavit of merit applied and dismissing state medical malpractice claim, but analyzing Eighth Amendment and § 1983 claim under summary judgment standard).

### 1.    Section 1983 & ADA

Trimble abandoned her §1983 and ADA claims.  They are therefore **DISMISSED with prejudice**.  Sur-Reply n.1, ECF No. 78.

### 2.    Rehabilitation Act

In order to make a prima facie case under the Rehabilitation Act, a plaintiff must show: (1) that he was a qualified individual with a disability; (2) the program or facility received federal funding; and (3) he was adversely treated solely as a result of the disability.  *Chandler v. City of Dall.*, 2 F.3d 1385, 1390 (5th Cir. 1993).  In order to recover under the Rehabilitation Act, Trimble must show she was a victim of discrimination based upon disability, and Millwood's acts and omissions were intentional.  *Delano-Pyle v. Victoria Cty.*, 302 F.2d 467, 574 (5th Cir. 2002).

Millwood argues two points to defeat Trimble's claim under the Rehabilitation Act.  First, Millwood argues that Trimble has not pleaded facts to establish that she meets the definition of a "qualified person" under the Act.  Mot. Summ. J. 23, ECF No. 37.  Second, Millwood argues that Trimble has failed to provide summary judgment evidence that she was denied any particular necessary services, programs, activities, or modifications "because of" or "solely as a result of" any alleged disability.  Reply 19, ECF No. 68.  Millwood further argues that Trimble cannot show intentional discrimination because her claims are instead based upon alleged medical negligence which cannot form a basis for recovery under the Rehabilitation Act.  *Id.* at 21.

17

a.      *Qualified Individual & Disability*

A person may prove they have a disability by showing: (a) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (b) a record of such an impairment; or (c) being regarded as having such an impairment. 42 U.S.C. § 12102(2). The ADA[3] does not define "substantially limits" and "major life activities," but regulations promulgated by the EEOC under the ADA define both. *Ray v. Glidden Co.*, 85 F.3d 227, 229 (5th Cir. 1996). "'Major life activities' is so defined as 'functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.'" *Id.* (citing 29 C.F.R. § 1630.2(i)). "Other major life activities could include lifting, reaching, sitting, or standing." *Ray*, 85 F.3d at 229 (citing *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 726 n. 7 (5th Cir.1995)). The definition of "disability" is construed in favor of broad coverage. 42 U.S.C. § 12102(4)(a). In determining whether an individual is substantially limited in a major life activity, courts consider: "(1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." *E.E.O.C. v. Chevron Phillips Chem. Co.,* LP, 570 F.3d 606, 615 (5th Cir. 2009). The Court analyzes the question of whether a person's condition is a disability under a case by case basis, especially when the symptoms may vary from person to person. *Sutton v. United Airlines, Inc.*, 527 U.S. 471, 483 (1999).

Trimble may fall within the definition of disabled if she can show that Millwood or Dr. Mehta regarded her as disabled. 42 U.S.C. § 12102(2)(c); *Das v. River W., L.P.*, 152 F.3d 471, 482 (5th Cir. 1998) (stating that the crux of a regarded-as claim focuses on the reactions and

---

[3] Because language in the ADA generally tracks the language in the Rehabilitation Act, "[t]he remedies, procedures and rights" available under the Rehabilitation Act are also accessible under the ADA and the "[j]urisprudence interpreting either section is applicable to both." *See* 42 U.S.C. § 12133 (1995). Thus, *Hainze v. Richards,* 207 F.3d 795, 799 (5th Cir. 2000).

18

perceptions of the relevant decision markers working with the plaintiff). Trimble alleges both that she is disabled and that Millwood considered her to be disabled. In conducting its analysis, the Court reviews the facts, and all inferences drawn from those facts, in the light most favorable to Trimble. *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 110–11 (5th Cir. 2005). The question for the Court is whether Trimble has presented sufficient evidence for a rational factfinder to conclude that Trimble was either disabled or regarded as disabled by Millwood.

In its Motion for Summary Judgment, Millwood argues that Trimble is not a "qualified individual" under the Rehabilitation Act. Mot. Summ. J. 23, ECF No. 37. Trimble responds with the following evidence. Prior to seeking treatment at Millwood, Trimble "experienced a number of behaviors and emotion problems," including anxiety. Resp. ¶ 26, ECF No. 16. Trimble slept only 2–4 hours a night for some time and lost over 5 pounds in a few days. *Id.* She also argues that she was "regarded as" disabled by Millwood. *Id.* at 16–17. In his deposition, Dr. Arambula testified that Trimble was "overwhelmed," "very upset," and "struggling with suicidal ideation." Resp. Summ. J. ("Arambula Dep.") 111, App. 1864, ECF No. 63-6. He also testified that Trimble was having problems with sleep, anxiety, feeling hopeless, and depression. *Id.* Trimble's medical records reflect that her thought content was "suicidal with plan" and includes the notation: "gun." Ex. B, App. 10, ECF No. 38-2. Dr. Mehta hoped that Trimble would seek continuing outpatient treatment when she was discharged. *Id.* at App. 7. Finally, Dr. Mehta informed Trimble that if she would not rescind her AMA form, [Child Protective Services] may need to be called because Trimble was "in an unstable condition that could put [her] daughter at risk." Trimble Decl. ¶ 51, ECF No. 63-4.

The Fifth Circuit, and every circuit to consider the question, has determined that sleep is a major life activity that can be substantially limited by a disability such as anxiety. *Chevron Phillips*

*Chem. Co., LP*, 570 F.3d at 614–15.  Parenting is also considered a major life activity.  *See MX Group, Inc. v. City of Covington*, 293 F.3d 326 (6th Cir. 2002).  Taking the evidence in the light most favorable to Trimble, the Court finds that Trimble has produced sufficient evidence to create a factual dispute as to whether she was disabled or regarded as disabled by Millwood.  *C.R. Pittman Const. Co., Inc. v. Nat'l Fire Ins. Co. of Hartford*, 453 F. App'x 439, 443 (5th Cir. 2011) (finding that evidence based on personal knowledge and containing factual assertions suffices to create a fact issue, even if it is arguably self-serving).  Millwood has not provided appropriate support to defeat Trimble's summary judgment evidence.

*b.*      *Intentional discrimination*

Next, Trimble must produce evidence that Millwood intentionally discriminated against her.  Of course, the Court reviews the evidence "through the summary judgment lens."  *Perez v. Doctors Hosp. at Renaissance, Ltd.*, 624 F. App'x 180, 185 (5th Cir. 2015).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A.*, 759 F.3d 498, 505 (5th Cir. 2014).  Trimble asserts that she was discriminated against when Millwood: (1) committed her to inpatient care against her will; (2) administered medication without her informed consent; and (3) falsified Trimble's medical records.

Trimble has presented evidence that Millwood falsified medical records reflecting a meeting between Trimble and a doctor on the night she was admitted, encouraged Trimble to sign blank documents that were later completed by members of the Millwood staff without her knowledge or consent, and administered medication to Trimble without her informed consent.  Trimble Decl. ¶¶ 8, 11, 22.  Contrary to Millwood's assertion that Trimble's claims are nothing more than medical negligence, Trimble accuses Millwood of engaging in intentionally fraudulent

and deceptive practices.  Resp. Summ. J. ¶ 58, ECF No. 63.  Thus, Trimble has shown sufficient evidence to create a factual dispute as to whether Millwood intentionally discriminated against her by falsifying medical records and administering medication without providing informed consent. *See id.*

Next, Millwood moves for summary judgment based on Trimble's failure to provide evidence on the manner in which she was denied reasonable accommodation.  Mot. Summ. J. 23, ECF No. 37.  It is Trimble's burden to show that the accommodation of outpatient care was reasonable in this case.  *Silva v. Chertoff*, 512 F. Supp. 2d 792, 816 (W.D. Tex. 2007).  Trimble argues that Millwood violated the Rehabilitation Act when it failed to provide Trimble with the reasonable accommodation of outpatient care.  She argues that "[i]t is now well-settled that an unwarranted inpatient mental hospitalization of a person with a mental disability is a form of discrimination based upon disability."  Resp. Summ. J. 13–14, ECF No. 63.  In *Olmstead v. Zimring*, the Suprme Court held that undue institutional care qualifies as discrimination under the ADA where the State knows community-based treatment would be appropriate and the patients did not oppose such treatment.  527 U.S. 581, 597–603 (1999).  The Supreme Court "emphasize[d] that nothing in the ADA or its implementing regulations condones termination of institutional settings for persons unable to handle or benefit from community settings."  *Id.* at 601–02.

Trimble's evidence does not show that undue institutional care occurred in her case.  *See supra* Part IIB2b.  Moreover, Trimble has not attached evidence to show that Millwood knew community-based treatment would be appropriate in her case.  *Id.* To the contrary, Trimble affirmatively cites Dr. Mehta's conclusion that Trimble was a threat to her child to establish her disability and regarded-as disability statuses.  Resp. Summ. J. ¶¶ 26--27, ECF No. 16 ("[T]he physician considered reporting her concerns to Child Protective Services . . . . This led to

21

[Trimble's] own sense of a need for treatment and the hospital's belief she was so dangerous to herself or others that she could not leave the facility when she wanted to do so.").   The only evidence to contradict this determination is Trimble's lay opinion that outpatient treatment was appropriate.   This is insufficient to create a genuine dispute of material fact.   Thus, the Court concludes that Trimble has failed to show that her requested accommodation was reasonable.

c.     Solely as A Result of Disability

Trimble argues that she "need not show the discrimination was solely related to her disabilities but rather provide competent summary judgement evidence the discrimination was a result of her disabilities."  Sur-Reply ¶ 10, ECF No. 78.  This is not the law in this circuit.  The Fifth Circuit has held that "[l]iability can only be found when the discrimination was 'solely by reason of her or his disability,' not when it is simply a 'motivating factor.'"  *Soledad v. U.S. Dep't of Treasury*, 304 F.3d 500, 505 (5th Cir. 2002).  Trimble's interpretation of *Bennett-Nelson v. Louisiana Board of Regents* is unfounded.  431 F.3d 448, 454 (5th Cir. 2005).  In *Bennett-Nelson*, the Fifth Circuit explained its holding in *Pace* that "the different causation requirements [under the ADA and the Rehabilitation Act are] immaterial where the plaintiff's challenge [is] to architectural barriers."  *Id.* at 454.  The court distinguished between claims of disability-based discrimination, and claims based on the failure to comply with an affirmative obligation to make reasonable accommodations for disabled individuals.  *Id.* at 454–55.  As the Court has determined that Trimble failed to show that her requested accommodation was reasonable, *Bennett-Nelson* does not apply.

On February 8, 2016, the Court ordered Trimble to file a Sur-Reply specifically addressing the third element of her Rehabilitation Act claim, whether the discrimination she alleges occurred solely as a result of her disability and that the discrimination was intentional.  Order, Feb. 8, 2016,

22

ECF No. 77; *see also* Sur-Reply ¶ 6, ECF No. 78.  The Court ordered Trimble to support her Sur-Reply with specific summary judgment evidence.  *Id.*  The evidence attached to Trimble's Sur-Reply includes her evidence of regarded-as disability status, her alleged disability, and her allegations of fraudulent and deceptive practices.  *Id.* ¶¶ 6–34.  The Court finds that Trimble has not attached evidence to create a factual dispute as to whether Millwood falsified Trimble's medical records *because* of her anxiety and depression.  Summary judgment is **GRANTED**.

## IV.     CONCLUSION

Based on the foregoing analysis, the Court determines that Defendant's Motion to Dismiss for Failure to Comply with Texas Civil Practice & Remedies Code § 74.351 (ECF No. 36) should be and is hereby **GRANTED** as to Trimble's state law claims; Defendant's Motion for Summary Judgment (ECF No. 37) should be and is hereby **GRANTED**; and Defendant's Motion to Dismiss for Failure to State a Claim (ECF No. 35) is **DENIED** as moot.  A final judgment will issue by separate order.

**SO ORDERED** on this **4th day** of **March, 2016.**

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**