IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| SAMANTHA TRIMBLE, | § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 4:14-cv-00868-O |
| MILLWOOD HOSPITAL, | § § | |
| Defendant. | § § § | |

**ORDER**

Before the Court are Defendant's ("Millwood") Motion for Summary Judgment and Brief and Appendix in Support (ECF Nos. 37–39), Trimble's Response (ECF No. 60), Millwood's Reply (ECF No. 68), Trimble's Sur-Reply (ECF No. 78), and the parties' supplemental briefs. Def.'s Br. Supp., ECF No. 95; Pl.'s Resp., ECF No. 98; Def.'s Reply, ECF No. 100. On June 6, 2016, the Court granted in part Plaintiff's ("Trimble") Motion for Reconsideration. Order, June 6, 2016, ECF No. 88. The Court ordered the parties to file supplemental briefs addressing which, if any, of Trimble's claims require expert testimony to establish causation. *Id.* at 5. The Court held a hearing on Defendant's Summary Judgment Motion on August 3, 2016. Having considered the briefing, the applicable law, and the arguments at the hearing, the Court concludes that Defendant's Motion for Summary Judgment should be **GRANTED in part** and **DENIED in part**.

**I.    BACKGROUND**

The facts of this case are contested. The following factual recitation is taken largely from Plaintiff's Amended Complaint. Am. Compl., ECF No. 21. On Friday, October 26, 2012, Samantha

1

Trimble, a teacher, was placed on administrative leave after one of her students allegedly fabricated a story that Trimble had played a humiliating joke on the student. Am. Compl. ¶ 20, ECF No. 21. Trimble became upset and called her pastor for emotional support. *Id.* ¶ 21. Sometime later, Trimble decided to visit a physician to receive a sleeping aid and address her anxiety. *Id.* ¶ 22. Trimble went to her doctor's office and answered the physician assistant's questions regarding her feelings of panic and anxiety, sleep issues, and eating problems. *Id.* ¶ 23. Trimble expressed her desire for a free consultation for psychological help that same evening and her primary care physician referred her to Millwood Hospital ("Millwood"). *Id.*; Sur-Reply ¶ 22, ECF No. 78.

Trimble went to Millwood and spoke with a licensed professional counselor. Am. Compl. ¶ 24. She signed a consent form for inpatient care. *Id.* ¶ 25. Trimble alleges that during the intake process, she was not provided information about the hospital's daily charges and she was not informed that she was being admitted. Pl.'s Am. Br. Mot. Summ. J. ¶¶ 56–57, ECF No. 63. She further alleges that she was not seen by a physician and the "Physician's Admission Order," on which her admission was based, was fraudulent. *Id.* ¶ 58.

Trimble was then taken down a long hallway and brought into a locked facility. Am. Compl. ¶ 26. She asked when she would see the psychiatrist but she alleges her request was ignored. *Id.* Trimble received medications for anxiety from the nurse and within minutes she was extremely drowsy. *Id.* ¶¶ 28–29. When she awoke the next day, Trimble stated that it was a mistake to have come to Millwood and that she wanted to leave the facility. *Id.* ¶ 30. After a nurse provided Trimble an "Against Medical Advice" form, Trimble filled out the form and asked to call her mother. *Id.* ¶¶ 31–32. Her request to leave was denied. *Id.* at ¶ 32.

Trimble alleges that while detained at Millwood, the staff refused to accommodate her religious beliefs, threatened her, repeatedly ignored her, and held her at the facility against her will. *Id.* ¶¶ 34–42. Trimble also alleges that she encountered severely disturbed and violent individuals that put her in fear of her life. *Id.* ¶ 81. Trimble eventually contacted the Arlington Police Department and asked them to intervene. *Id.* ¶ 65. The Police Department was not able to intervene, Trimble alleges, because Millwood refused to show the officer her admission documentation, despite Trimble approving showing the officer her records. *Id.* ¶ 66. After two additional days Trimble was discharged. *Id.* ¶¶ 71, 73.

Trimble brings the following claims against Millwood: (1) negligence; (2) gross negligence; (3) false imprisonment; and (4) violations of her civil rights under § 504 of the Rehabilitation Act, the Americans with Disabilities Act, and 18 U.S.C. § 1983. She also brought state law claims pursuant to various provisions of the Texas Health & Safety Code and related provisions.[1] Am. Compl., ECF No. 21. Based on these claims, Trimble seeks damages for emotional distress, past medical expenses, out-of-pocket costs, loss of opportunity, and exemplary damages. Am. Compl. ¶¶ 120–28. Trimble subsequently waived her claims under the Americans with Disabilities Act and 18 U.S.C. § 1983. Pl.'s Sur-Reply Mot. Summ. J. 1 n.1, ECF No. 78. The other claims remain.

Millwood filed a Motion to Dismiss for Failure to Comply with § 74.351 of the Texas Civil Practice & Remedies Code and Motion for Summary Judgment on each of Trimble's claims. *See* Br. Supp. Mot. Summ. J., ECF No. 39; Mot. Dismiss, ECF No. 36. The Court granted Millwood's

---

[1] Specifically, the Amended Complaint lists "Tex. Health & Safety Code, Title 7, Subtitle C"; "25 Tex. Admin. Code, Chapter 404"; "Title 2, Article 3, Subchapter L, of the Tex. Health & Safety Code"; "Texas Health & Safety Code § 576.021(5)"; "25 TAC 404.154(3) and 404.154(24); and finally "Title 4, Subtitle G, Chapter 321, § 321.003 of the Tex. Health & Safety Code." Am. Compl. ¶¶ 102–04.

Motion to Dismiss based on Trimble's failure to file an expert report in accordance with § 74.351, an order the Court reconsidered after the Fifth Circuit issued an opinion holding that the expert report requirement does not apply in federal court. Order, June 6, 2016, ECF No. 88; *Passmore v. Baylor Health Care System*, 823 F.3d 292, 299 (5th Cir. 2016). The Court also reconsidered its grant of summary judgment on Trimble's Rehabilitation Act claim. Order, June 6, 2016, ECF No. 88. Because the Court originally disposed of Trimble's health care liability claims with Millwood's Motion to Dismiss, the Court did not consider those claims with Millwood's Motion for Summary Judgment. In granting Trimble's Motion to Reconsider in part, the Court ordered additional briefing on which of Trimble's dismissed claims require expert testimony to establish liability or causation, as she designated no expert witness to testify in this case. *Id.* The Court also held a hearing on the Motion for Summary Judgment. Minute Entry, Aug. 8, 2016, ECF No. 109. The parties filed their supplemental briefs, and the Court now addresses Millwood's Motion for Summary Judgment anew.

## II. LEGAL STANDARD

Summary judgment is proper when the pleadings and evidence on file show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Rule 56(c) places the initial burden on the moving party to identify those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the

portions of the record that reveal there are no genuine material fact issues. *Celotex Corp.,* 477 U.S. at 323; Fed. R. Civ. P. 56(c).

When the moving party has carried its burden of demonstrating the absence of a genuine dispute of material fact, the nonmoving party bears the burden of coming forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). When reviewing the evidence on a motion for summary judgment, the court must decide all reasonable doubts and inferences in the light most favorable to the non-movant. *See Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). The court cannot make a credibility determination in light of conflicting evidence or competing inferences. *Anderson*, 477 U.S. at 255. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994).

### III. ANALYSIS

#### A. Medical Negligence and Gross Negligence

Trimble alleges that Millwood was negligent by committing her to inpatient care "when it was not necessary," and Millwood "violated the duty of care it owed [her] to exercise that degree of care . . . ordinarily possessed and used by other mental health treatment centers." Am. Compl. ¶¶ 111–12. Based on Millwood's alleged negligence and gross negligence, Trimble seeks damages for emotional distress, past medical expenses, out-of-pocket costs, loss of opportunity, and exemplary damages. Am. Compl. ¶¶ 120–28.

Millwood moves for summary judgment of Trimble's negligence claims, arguing that Trimble's negligence claims require expert testimony to establish standard of care, breach, and causation. Def.'s Suppl. Br. Mot. Summ. J. 3, ECF No. 95. In support of its Motion for Summary Judgment, Millwood attaches the affidavit of Dr. Michael Arambula. Def.'s App. Br. Mot. Summ. J., Ex. A ("Arambula Aff."), ECF No. 38-1. Dr. Arambula states that "Millwood Hospital was not negligent nor grossly negligent in its care, treatment and services provided to Samantha Trimble," and that Millwood "met or exceeded the applicable standards of care, and [acted] consistent with all applicable statutory or regulatory requirements." Arambula Aff. ¶ 3, ECF No. 38-1. Trimble offers no expert testimony to counter Dr. Arambula. She argues that expert testimony is not necessary because "[the] applicable standards of care are set in Chapter [sic] 164, 321, 572, 576 and 611 of the Texas Health & Safety Code, as well as the Patient Bill of Rights, found at 40 T.A.C. § 404.154 . . . ." Pl.'s Am. Resp. Mot. Summ. J. ¶ 54, ECF No. 60.

To prevail on her medical negligence claim under Texas law, Trimble must show: (1) Millwood owed her a duty to meet the relevant standard of care; (2) Millwood breached that standard of care; (3) she suffered an injury; and (4) Millwood's breach caused that injury. *Mills v. Angel*, 995 S.W.2d 262, 267 (Tex. App.—Texarkana 1999, no pet.). The standard of care for a hospital like Millwood "is what an ordinary hospital would have done under the same or similar circumstances." *Id.* at 268 (citing *Denton Reg'l Med. Ctr. v. LaCroix*, 947 S.W.2d 941, 950–51(Tex. App.—Fort Worth 1997, writ dism'd by agr.)). Expert testimony is generally required to establish the standard of care, particularly "when the underlying issue involves the performance of medical procedures." *Denton*, 947 S.W.2d at 950–51 (citing *St. Paul Med. Ctr. v. Cecil*, 842 S.W.2d 808, 814 (Tex. App.—Dallas 1992, no writ)). "But when the underlying negligence involves the standard of non-

medical, administrative, ministerial, or routine care at a hospital, expert testimony is not needed because the jury is competent from its own experience to determine and apply such a reasonable care standard." *Mills*, 995 S.W.2d at 268 (citing *Cecil*, 842 S.W.2d at 812).

At the hearing on the Motion for Summary Judgment, Trimble conceded that the treatment decisions once she was admitted to Millwood would "arguably" require expert testimony. Draft Hr. Trans. 3:5–7. As a result, Trimble focuses her negligence claim on the process of her admission to Millwood in order to cast the negligence question as purely administrative and not requiring expert testimony. Pl.'s Resp. Suppl. Br. Mot. Summ. J. ¶ 16, ECF No. 98. However, the process for admitting a patient for inpatient care at a mental hospital is as much a medical treatment decision as any decision made after admission. Establishing the standard of care for admitting an individual for inpatient care "require[s] evidence on the proper training, supervision, and protocols" necessary to ensure the proper admission of patients. *Texas W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 182 (Tex. 2012) (holding that expert testimony was necessary to establish a mental hospital's standard of care for preventing aggressive behavior between patients and employees); *see also Denton*, 947 S.W.2d at 951 (requiring expert testimony on "whether the standard of care required the hospital to require [Certified Registered Nurse Anesthetists] supervision by an anesthesiologist"). Such information is not within a jury's common knowledge or experience. *Mills*, 995 S.W.2d at 268.

Trimble's references to Texas's statutory and regulatory code do not alter this analysis. It is unclear from Trimble's briefing whether she offers these provisions as proof of negligence per se or as the basis for res ipsa loquitur, but her argument fails on both accounts. Trimble describes her argument as an application of the common law doctrine of res ipsa loquitur. Pl.'s Am. Resp. Summ.

J. ¶ 51, ECF No. 60. However, the term does not accurately describe Trimble's argument. Res ipsa loquitur provides that "in some circumstances, the mere fact of an accident's occurrence raises an inference of negligence that establishes a prima facie case." Res Ipsa Loquitur, *Black's Law Dict.* (10th ed. 2014). Trimble does not argue that any injury or accident raises an inference of negligence, but rather that the violation of a statute establishes negligence. This is negligence per se. Negligence, *Black's Law Dict.* (10th Ed. 2014) ("negligence per se usu. arises from a statutory violation").

Millwood asserts that Trimble's negligence per se arguments were not timely pleaded. Reply Mot. Summ. J. 7, ECF No. 68. While "negligence per se" was not explicitly stated in Trimble's Amended Complaint, the Court finds that Trimble's citation to the relevant provisions in her "Statement of Facts" and in the section entitled "Violations of the Mental Health Code" was sufficient to put Millwood on notice that these provisions were incorporated into Trimble's negligence claim. Pl.'s Am. Compl. ¶¶ 13–16, 102–04, ECF No. 21. In subsequent briefing, Trimble cited ever-changing provisions and chapters of the Texas code as a basis for her negligence per se claim, but the Court analyzes only those provisions relevant and specifically cited in her First Amended Complaint as a basis for negligence per se. *See Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (noting the purpose of Federal Rule of Civil Procedure 8(a)(2) is to "give the defendant fair notice of what the . . . claim is") (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

The only relevant provisions specifically referenced in the Amended Complaint are: (1) Texas Health & Safety Code § 164.009; (2) various provisions of title 7 subtitle C chapters 571, 572, 574, and 576 of the Texas Health & Safety Code; and (3) Chapter 404 of Title 25 of the Texas Administrative Code ("T.A.C."). None of these provisions provide a basis for negligence per se.

"Negligence per se is a common-law doctrine in which a duty is imposed based on a standard of conduct created by a penal statute rather than on the reasonably prudent person test used in pure negligence claims." *Smith v. Merritt*, 940 S.W.2d 602, 607 (Tex. 1997). "However, not every penal statute creates an appropriate standard of care for civil liability purposes . . . ." *Id.* In determining whether to impose tort liability for violations of a criminal statute, "the ultimate question" is whether it is "fair, workable, and wise." *Perry v. S.N.*, 973 S.W.2d 301, 306 (Tex. 1998).

Section 164.009 of the Texas Health & Safety Code and chapter 404 of the T.A.C. cannot provide a basis for negligence per se because they are not penal statutes. "A 'penal statute' is one that defines a criminal offense and specifies a corresponding fine, penalty, or punishment." *Pack v. Crossroads, Inc.*, 53 S.W.3d 492, 509 (Tex. App.—Fort Worth 2001, pet. denied ) (citing 1421 *Black Law's Dict.* (7th ed. 1999)). Neither § 164.009 nor 25 T.A.C. § 404.154 are enforced by criminal penalties and are, therefore, not penal. *See Watkins v. Cornell Companies*, *Inc.*, No. 3:11-CV-260-M-BN, 2013 WL 1914713, at *4–5 (N.D. Tex. 2013) (Horan, M.J.), *adopted by*, 2013 WL 1926375 (N.D. Tex. May 8, 2013) (Lynn, J.).

Section 571.020 of the Texas Health & Safety Code does provide criminal penalties for knowingly violating any provision of title 7 subtitle C of the Texas Health & Safety Code, which encompasses the remaining chapters on which Trimble relies. However, the Court declines to find that § 571.020 is sufficient to transform subtitle C into a penal statute, and relies on legislative intent in rejecting these provisions as a basis for negligence per se.

In *Smith v. Merritt*, the Texas Supreme Court considered whether tort liability should be imposed for violation of a statute imposing criminal penalties for serving alcohol to someone under the age of twenty-one. 940 S.W.2d 602, 607 (Tex. 1997). The court found it dispositive that the

9

legislature had enacted a chapter separate from the relevant criminal chapter to establish civil liability for serving alcohol. *Id*. The court held that "the Legislature manifested its intent that the [civil liability chapter] should serve as the sole basis of civil liability for serving alcohol to persons aged eighteen to twenty." *Id.* at 608.

Here, the Court reaches a similar conclusion. The Court finds that the Texas legislature has manifested a similar intent with title 7 subtitle C of the Texas Health & Safety Code. While § 571.020 is codified within subtitle C, the provision providing civil liability is § 321.003 of the Texas Health & Safety Code, which is found title 4 subtitle G. Tex. Health & Safety Code § 321.003. Significantly, Title 4 is entitled "Health Facilities," and Subtitle G is entitled "Mental Health, Chemical Dependency, and Rehabilitation Services." By incorporating civil liability in a title and subtitle focused specifically on the regulation of mental health facilities, the Texas legislature manifested its intent for § 321.003 to provide "the sole basis of civil liability" for violations of subtitle C by mental health facilities such as Millwood. *See Smith*, 940 S.W.2d at 607 (Tex. 1997).

Because the provisions on which Trimble relies cannot form a basis for a negligence per se claim and Trimble has failed to provide expert testimony to establish the standard of care for her negligence claim, summary judgment on Trimble's negligence and gross negligence claims is **GRANTED**.

B.   **False Imprisonment**

Trimble also alleges a false imprisonment claim based on her admission to and subsequent detention at Millwood. Millwood moves for summary judgment on the grounds that Trimble's false imprisonment claim requires expert testimony. In order for Trimble to succeed on her false imprisonment claim she must prove Millwood willfully detained her, without her consent, and

without authority of law. *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995) (citing *Sears, Roebuck & Co. v. Castillo*, 693 S.W.2d 374, 375 (Tex. 1985)). The Court finds that Trimble's false imprisonment claim is really two separate claims: (1) the first related to Dr. Mehta's decision to detain Trimble after she requested discharge; and (2) the second related to the alleged statutory violations Trimble contends resulted in her fraudulent admission. The Court will analyze these in turn.

Defendant argues that Trimble must provide expert testimony to establish that she was detained without lawful authority when Millwood detained her after her request for discharge. The Court agrees. Texas law clearly authorizes a physician to detain a patient if the physician "has reasonable cause to believe that the patient might meet the criteria for court-ordered mental health services." Tex. Health & Safety Code § 572.004(c); *Groomes v. USH of Timberlawn, Inc.*, 170 S.W.3d 802, 806 (Tex. App.—Dallas 2005, pet. denied). In order to prove that Millwood acted without authority of law in detaining her, Trimble "will necessarily have to offer evidence that the doctor departed from an accepted standard of medical care by not authorizing [her] discharge." *Groomes*, 170 S.W.3d at 806 (court found expert testimony necessary to establish standard of care for false imprisonment claim related to mental hospital's failure to discharge patient). Whether there is sufficient reason to believe a patient may need court-ordered mental health services is a medical question that requires expert testimony. *Id.*

Millwood provided the expert testimony of Dr. Arambula to show that Dr. Mehta acted under statutory authority when he issued the order to hold Trimble afer she requested discharge. Arambula Aff. ¶¶ 8, 13, App. 4, 6, ECF No. 38-1. Dr. Arambula also found that Millwood acted appropriately in following Dr. Mehta's order. *Id.* Trimble has not offered expert evidence controverting Dr.

11

Mehta's testimony and therefore cannot establish that her detention after requesting discharge was without authority of law. *Randall's Food Markets*, 891 S.W.2d at 644. As a result, Trimble has failed to offer sufficient summary judgment evidence to create a material issue of fact for her false imprisonment claim as it relates to Dr. Mehta's decision not to discharge her from Millwood.

To avoid this expert report requirement, Trimble shifted her false imprisonment claim in later briefing to focus on the alleged statutory violations surrounding her initial admission. Trimble contends that her admission to Millwood was without her consent because "she never received necessary information about the hospital's daily charges, . . . was never told she was being admitted," and the physician's order supporting admission "was based on a physical examination that never occurred." Pl.'s Am. Resp. Mot. Summ. J. ¶ 70, ECF No. 60; Pl.'s App. Am. Resp. Mot. Summ. J. Ex. D (Trimble Deposition) 243:7–13, App. 59, ECF No. 59-5. Millwood argues that Trimble must still provide expert testimony to controvert Dr. Arambula's testimony that the care and services provided by Millwood at the admission stage and throughout "were appropriate, met the applicable standards of care and were in compliance with applicable statutory guidelines . . . ." Def.'s Suppl. Br. Mot. Summ. J. 6–7, ECF No. 95.

The Court finds that expert testimony is not required for Trimble's false imprisonment claim as it relates to her initial admission. Section 572.002 of the Texas Health & Safety Code provides that a mental health facility may admit a patient for voluntary inpatient services if the facility performs a preliminary examination and informs the patient of his or her patient rights. Tex. Health & Safety Code § 572.002. Trimble alleges that there was no preliminary examination and she was not provided her patient rights. Am. Compl. ¶¶ 25–27, ECF No. 21. A jury could find that failure to meet these statutory requirements invalidated Millwood's legal authority to have admitted Trimble

12

to inpatient care.  Further, a detention is "without consent" "if [] induced by deception or coercion." *Smith v. State*, 2016 WL 3611546, at *2 (Tex. App.—Dallas 2016, no pet.) (citing Tex. Penal Code Ann. §§ 1.07(a)(19)(A), 31.03(3)(A)).  Whether Millwood's alleged failure to meet the statutory requirements amounted to deception nullifying Trimble's consent is also a fact question for the jury.

Millwood's contention that Trimble's false imprisonment claims are merely recast healthcare liability claims does not affect this analysis.  Reply Suppl. Br. Mot. Summ. J. 3, ECF No. 100. Texas courts have found that false imprisonment claims related to the provision of medical services are healthcare liability claims under the Medical Liability and Insurance Improvement Act and therefore subject to § 74.351 of the Texas Civil Practice & Remedies Code, which imposes an expert report pleading requirement.  *See Groomes,* 170 S.W.3d at 806.  However, the Fifth Circuit recently concluded that § 74.351 does not apply in federal court.  *Passmore*, 823 F.3d at 292.  Millwood provides no other legal basis for imposing a blanket expert testimony requirement on all healthcare liability claims; therefore, it is irrelevant whether Trimble's false imprisonment claim is a recast healthcare liability claim when § 74.351 no longer applies.

As the Court finds that expert testimony is not necessary to establish whether or not Millwood complied with the dictates of statute and material issues of fact remain for the jury, Millwood's motion for summary judgment as to Trimble's false imprisonment claim prior to Dr. Mehta's refusal to discharge her is **DENIED**.

  **C.**  **Mental Health Code Statutes**

Texas Health & Safety Code § 321.003 provides a private cause of action against a treatment or mental health facility for anyone harmed by a violation of certain mental health provisions.  Tex. Health & Safety Code § 321.003. Trimble pleads a claim under this provision for Millwood's alleged

13

violations of "Plaintiff's general patient rights under the Texas Mental Health Code." Am. Compl. ¶ 102. Millwood argues that Trimble was required to provide expert testimony to prove this claim as well, but failed to do so. Suppl. Br. Mot. Summ. J. 8, ECF No. 95.

Millwood cites several cases in support of its expert testimony argument. *Id.* at 7–8 (citing *Tex. Laurel Ridge Hosp., L.P. v. Almazan*, 374 S.W.3d 601 (Tex. App.—San Antonio 2012, no pet.); *Broxterman v. Carson*, 309 S.W.3d 154 (Tex. App.—Dallas 2010, pet. denied); *Tex. Cypress Creek Hosp. L.P. v. Hickman*, 329 S.W.3d 209 (Tex. App.—Houston [14th Dist.] 2010, pet. denied); *Groomes*, 170 S.W.3d at 802; *Parker v. CCS/Meadow Pines, Inc.*, 166 S.W.3d 509 (Tex. App.—Texarkana 2005, no pet.)). Yet each of these cases relies on § 74.351 of the Texas Civil Practice and Remedies Code in holding that claims under § 321.003 require expert testimony. As noted above, the pleading requirements of section § 74.351 do not apply in federal court, making the cases Millwood cites inapposite. *Passmore*, 823 F.3d at 292.

Millwood points to no other case or statute to support its contention that Trimble must provide expert testimony to maintain a claim under § 321.003 of the Texas Health & Safety Code. Trimble has provided sufficient summary evidence without expert testimony to create a fact issue as to whether Millwood complied with the provisions of the Texas Health & Safety Code enforced by § 321.003. Accordingly, the motion for summary judgment as to Trimble's claim under § 321.003 of the Texas Health & Safety Code is **DENIED**.

> D.   **Rehabilitation Act**

Trimble also claims that Millwood's alleged statutory violations amount to a violation of § 504 of the Rehabilitation Act. Pl.'s Sur-Reply Suppl. Br. Mot. Summ. J. ¶¶ 27–31, ECF No. 78; 29 U.S.C. § 794. To make a prima facie case under the Rehabilitation Act, a plaintiff must show:

(1) that she was a qualified individual with a disability; (2) the program or facility received federal funding; and (3) she was adversely treated solely as a result of the disability. *Chandler v. City of Dall.*, 2 F.3d 1385, 1390 (5th Cir. 1993). In order to recover compensatory damages, the plaintiff must show that the adverse acts or omissions were intentional. *Delano-Pyle v. Victoria Cty.*, 302 F.3d 567, 574 (5th Cir. 2002) (citing *Carter v. Orleans Parish Pub. Sch.*, 725 F.2d 261, 264 (5th Cir. 1984)).

In its initial Order on Summary Judgment, the Court granted summary judgment on Trimble's Rehabilitation Act claim. Order, March 4, 2016, ECF No. 80. The Court found that while there was a question of fact as to Trimble's alleged qualifying disability and the intentionality of Millwood's actions, Trimble had not provided sufficient summary judgment evidence to create a factual dispute as to whether the adverse actions were "solely as a result of" her disability or whether she was denied reasonable accommodation. *Id.* at 18–23. The Court found on reconsideration that it had impermissibly drawn an inference in the movant's favor when considering whether the alleged statutory violations occurred *because* of her qualifying disability and denied summary judgment.[2] Order Reconsid. 4, June 6, 2016, ECF No. 88.

On reconsideration, Millwood challenges Trimble's Rehabilitation Act claim again, arguing that Trimble must offer expert testimony causally connecting Trimble's alleged damages to Millwood's alleged violations rather than the medical conditions that caused Trimble to seek help from Millwood initially. Reply Suppl. Br. Mot. Summ. J. 5, ECF No. 100; Suppl. Br. Mot. Summ. J. 11, ECF No. 95. Millwood provides no legal support for this assertion and the Court declines to

---

[2] The Court declined to reconsider its conclusion that Trimble had failed to provide sufficient summary judgment evidence to support her claim that she was denied reasonable accommodation. Order Reconsid. 4, Junder 6, 2016, ECF No. 88.

15

impose a blanket expert testimony requirement at the summary judgment phase. The standard of proof for compensatory damages in discrimination cases is not so exacting. Compensatory damages may not be presumed; however "corroborating testimony and medical evidence is *not* required in *every* case involving compensatory damages." *DeCorte v. Jordan*, 497 F.3d 433, 442 (5th Cir. 2007) (citing *Migis v. Perale Vision, Inc.*, 135 F.3d 1041, 1046–47 (5th Cir. 1998)). A claimant's testimony alone may even be sufficient to support a finding of compensatory damages. *DeCorte*, 497 F.3d at 442.

While Trimble may struggle to convince a jury that her alleged damages were caused by Millwood's alleged violations without expert testimony, a jury is equipped to make this determination on its own. It is not a medical question whether the stigma related to being admitted to a mental institution is the cause of Trimble's diminished job opportunities. Nor is it a medical question whether her admission to Millwood caused her out-of-pocket expenses.

Millwood's argument that Trimble would need expert testimony to establish that her emotional distress was caused by her admission to Millwood, not by her pre-existing medical conditions, is more persuasive. Expert medical testimony would be enlightening in distinguishing between the two potential causes; however, the law does not mandate expert testimony.

While the Fifth Circuit has not specifically addressed the causation element of emotional distress damages, the Eighth Circuit has touched upon this issue a number of times. *See Webner v. Titan Distrib., Inc.*, 267 F.3d 828, 836 (8th Cir. 2001) (finding emotional distress damages award appropriate based on plaintiff's own testimony of distress in combination with the surrounding circumstances); *Christen v. Titan Distrib., Inc.*, 481 F.3d 1085, 1096–97 (8th Cir. 2007) (finding emotional distress damages award appropriate based on testimony of husband and wife showing

16

temporal relationship between discriminatory act and emotional distress); *Heaton v. Weitz Co.*, 534 F.3d 882, 891 (8th Cir. 2008) (finding denial of judgment as a matter of law for jury award of emotional distress damages not improper based on plaintiff's personal testimony of emotional distress and subsequent medical treatment). The Eighth Circuit has held that "[a] plaintiff is entitled to damages for emotional distress when there is evidence of actual emotional distress caused by [a defendant's] discriminatory acts . . . ." *Christensen*, 481 F.3d at 1096–97 (citing *Weber*, 267 F.3d at 836). Plaintiff's testimony alone can be sufficient to establish damages and causation, but the plaintiff must "offer specific facts as to the nature of his claimed emotional distress and the causal connection to [the] alleged violations." *Id.* The Eight Circuit reasons that this flexible standard is necessary because "[a]wards for pain and suffering are highly subjective and the assessment of damages is within the sound discretion of the jury, especially when the jury must determine how to compensate an individual for an injury not easily calculable in economic terms." *Id.*

Under this standard, expert testimony is not required. Trimble's emotional distress claims are subjective and within the discretion of the jury. At trial, Trimble may be unable to provide sufficient testimony to prove to the jury that her emotional distress was caused by Millwood's alleged violation, rather than her pre-existing conditions. But Trimble has provided sufficient summary judgment evidence without expert testimony to create a material issue of fact as to whether her admission to Millwood was the cause of her alleged damages.

As there is a fact issue for the jury regarding Trimble's alleged damages, Millwood's motion for summary judgment as to Trimble's Rehabilitation Act claim is **DENIED**.

## IV.   CONCLUSION

Based on the foregoing, the Court finds that Defendant's Motion for Summary Judgment

17

should be and is hereby **GRANTED in part** and **DENIED in part**.  The motion is granted as to Plaintiff's claims for medical negligence, gross negligence, and a portion of the false imprisonment claim and is denied as to Plaintiff's claims under § 321.003 of the Texas Health & Safety Code, § 504 of the Rehabilitation Act, and the false imprisonment claim related to her initial admission.

**SO ORDERED** on this **12th day** of **September, 2016.**

_____
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**